John G. Yslas (SBN 187324)
John.yslas@wilshirelawfirm.com
Eugene Zinovyev (SBN 267245)
Eugene.zinovyev@wilshirelawfirm.com
John Brown (SBN 233605)
John.brown@wilshirelawfirm.com
Gabriella Solé (SBN 346164)
Gabriella.sole@wilshirelawfirm.com
**WILSHIRE LAW FIRM**
660 S. Figueroa Street, Sky Lobby
Los Angeles, CA 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE SITEMAN, individually, and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>   v.<br><br>CHAN ZUCKERBERG INITIATIVE, LLC, a Limited Liability Company; GIRISH PATANGAY, an individual, and DOES 1 through 50, inclusive,<br><br>   *Defendants*. | Case No. 3:26-cv-02362-JD<br><br>[*Assigned for all purposes to Hon. James Donato, 11 – 19th Floor*]<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**<br><br>Date:        August 6, 2026<br>Time:        11:00 a.m.<br>Dept.:       Room 11, 19th Floor |

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**

# TABLE OF CONTENTS

I      INTRODUCTION..................................................................................................................6

II     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ...........................................7

III    THE EFAA PRECLUDES COMPELLING THIS ACTION TO ARBITRATION .....................7

    A.    Plaintiff's Harassment Allegations ...........................................................................................7

        1.    Defendant Patangay Viewed Women as Sexual Objects First and Employees Second........8

        2.    Those Women Who Did Not Submit Themselves to Patangay's Sexual Appearance Requirements were Harassed, Humiliated and Forced to Perform Embarrassing Menial Tasks..8

    B.    Since Plaintiff Alleges Sexual Harassment the EFAA Precludes Enforcement of the Agreement as to Plaintiff's Entire Action. ....................................................................................9

    C.    Plaintiff Has Sufficiently Plead a Sexual Harassment Claim. ..............................................10

    D.    The Facts Alleged by Plaintiff More Than Meet the Required Sexual Harassment Standards 12

    E.    Even The Authorities Cited By Defendant Support Denial of Their Motion.........................13

IV     THE PURPORTED AGREEMENT IS IREDEEMABLY UNCONSCIONABLE. ...................16

    A.    Procedural Unconscionability...............................................................................................16

    B.    Substantive Unconscionability. ............................................................................................17

        1.    Imposition of Fees. .........................................................................................................17

        2.    Inclusion of Non-Arbitrable Claims................................................................................18

        3.    Blanket Collective Action Waiver Inclusive of Representative PAGA Claims ................19

        4.    Indefinite Scope...............................................................................................................19

    C.    The Purported Agreement Is Unenforceable and Cannot Be Saved by Severance.................20

V      CONCLUSION...................................................................................................................20

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**

# TABLE OF AUTHORITIES

**CASES**

*A&M Produce Co. v. FMC Corp.*

(1982) 135 Cal.App.3d 473 ...............................................................................................17

*Adolph v. Uber Technologies Inc.*

(2023) 14 Cal.5th 1104 ....................................................................................................20

*Armendariz v. Foundation Health Psychcare Services, Inc.*

(2000) 24 Cal.4th 83 ...........................................................................................17, 18, 19

*Arouh v. GAN Ltd.*

*(C.D. Cal. Mar. 22, 2024) No. 8:23-cv-02001-FWS) 2024 WL 3469032* ....................10

*Baldwin v. TMPL Lexington LLC*

(S.D.N.Y., Aug. 19, 2024) No. 23 Civ. 9899 (PAE)) 2024 WL 3862150 ......................10

*Baltazar v. Forever 21, Inc.*

(2016) 62 Cal.4th 1237 ....................................................................................................18

*Beltran v. Hard Rock Hotel Licensing, Inc*

(2023) 97 Cal.App.5th 865 ..............................................................................................12

*Beyda v. City of Los Angeles*

(1998) 65 Cal.App.4th 511 ..............................................................................................11

*Carlson v. Home Team Pest Defense, Inc*

 (2015) 239 Cal.App.4th 619 ...........................................................................................17

*Cook v. University of Southern California*

(2024) 102 Cal.App.5th 312 ......................................................................................18, 21

*Cozzi v. County of Marin*

(N.D. Cal. 2011) 787 F.Supp.2d 1047 ............................................................................12

*Ding v. Structure Therapeutics Inc.*

(2024) 755 F.Supp.3d 1200 .................................................................................11, 12, 13

*Doe v. Second Street Corp.*

(2024) 105 Cal.App.5th 552 .................................................................................10, 11, 19

*E.E.O.C. v. California Psychiatric Transitions, Inc.*

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**

(E.D. Cal. 2009) 644 F.Supp.2d 1249 ................................................................................................11

*Gutierrez v. Autowest, Inc.*

(2003) 114 Cal.App.4th 77 ...............................................................................................................17

*Iskanian v. CLS Transportation Los Angeles LLC*

(2014) 59 Cal.4th 348 .....................................................................................................................20

*Johannessen v. JUUL Labs, Inc.*

(N.D. Cal. June 24, 2024) 2024 U.S. Dist. LEXIS 110903 ...........................................................15, 16

*Johnson v. Everyrealm, Inc.*

(S.D.N.Y. 2023) 657 F.Supp.3d 535 ...............................................................................................10

*Kim v. Reins International California, Inc.*

(2020) 9 Cal.5th 73 .........................................................................................................................20

*Martinez v. Master Protection Corp.*

(2004) 118 Cal.App.4th 107 ...........................................................................................................19

*Mera v. SA Hospitality Group, LLC*

(S.D.N.Y. 2023) 675 F.Supp.3d 442 ...............................................................................................10

*Miniso Depot CA, Inc.*

(2024) 105 Cal.App.5th 791 ...........................................................................................................10

*Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*

(S.D.N.Y., Aug. 23, 2024) ...............................................................................................................10

*Nyulassy v. Lockheed Martin* Corp.

(2004) 120 Cal.App.4th 1267 .........................................................................................................17

*Olivieri v. Stifel, Nicolaus & Co.*

(2d Cir. 2024) 112 F.4th 74 .............................................................................................................10

*OTO, L.L.C. v. Kho*

(2019) 8 Cal.5th 111 ...................................................................................................................17, 18

*Pantoja v. Anton*

(2011) 198 Cal.App.4th 87. .............................................................................................................11

*Ramirez v. Charter Communications, Inc.*

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**

(2024) 16 Cal.5th 478 ..................................................................................................................19

*Rieger v. Arnold*

(2002) 104 Cal.App.4th 451 .........................................................................................................12

*Sandoval v. American Bldg. Maintenance Industries, Inc.*

(8th. Cir. 2009) 578 F.3d 787 .......................................................................................................11

*Sharp v. S&S Activewear, L.L.C.*

(9th Cir. 2023) 69 F.4th 974 .........................................................................................................11

*Thomas v. Regents of University of California*

(2023) 97 Cal.App.5th 587 ...........................................................................................................11

*Turner v. Tesla, Inc.*

*(N.D. Cal. 2023) 686 F.Supp.3d 917* ...............................................................................10, 16, 19

*Van De Hey v. EPAM Systems, Inc.*

(N.D. Cal. Feb. 28, 2025) 2025 WL 829604 ....................................................................14, 15, 17

*Viking River Cruises Inc. v. Moriana*

(2022) 596 U.S. 639..................................................................................................................... 20

*Watson v. Blaze Media LLC*

(N.D. Tex., Aug. 3, 2023) No. 3:23-CV-0279-B) 2023 WL 5004144...........................................10

**STATUTES**

9 U.S.C. § 402(a)............................................................................................................................10

EFAA," 9 U.S.C. §§ 401-402 ........................................................ 6, 9, 10, 11, 12, 16, 19

FEHA .............................................................................................................................................14

Government Code §§ 12940 (a) and 12926 (o)) ..............................................................................8

Labor Code § 2698, et seq. .............................................................................................................7

Labor Code Private Attorneys General Act of 2004 ................................................................. 7, 19

Labor Code section 1102.5..............................................................................................................9

**OTHER AUTHORITIES**

Judicial Council of California Civil Jury Instructions (CACI) 2521 A .........................................12

**RULES**

Federal Rule of Civil Procedure 15(a)(2) .....................................................................................20

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I    INTRODUCTION.

Defendant Chan Zuckerberg Initiative, LLC ("Defendant" or "CZI") Motion to Compel Arbitration, Strike Class Allegations, and Stay Proceedings ("Motion") is futile and must be denied. As detailed below, and as alleged both in Plaintiff's original and amended Complaint, Plaintiff was subject to severe and pervasive sexual harassment resulting in a hostile work environment, and specifically by being forced to work in an environment where women were judged as sexual objects first and employees second.

When Defendant challenged the adequacy of the already sufficient harassment allegations, Plaintiff presented further facts via declaration of the severity and pervasiveness of the hostile work environment. The Court then allowed Plaintiff to formally amend her Complaint to add these allegations. Following the filing of the First Amended Complaint, Defendant had the option to prepare a revised motion to compel arbitration. It just chose not to and only now relies on its original Motion – which cavalierly does not even remotely address the enormous amount of additional examples of actionable conduct added to the amended complaint; Defendant's motion should be denied for this reason alone.[1] The Motion also improperly attempts to deal with summary judgment type evidence at this early pleading stage, when the FAC is more than sufficiently pled.

Defendant's Motion must be denied in its entirety because the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA," 9 U.S.C. §§ 401-402) precludes enforcement of the agreement as Plaintiff has sufficiently pled a sexual harassment claim. Defendant had an ongoing and repetitive policy and practice that included treating women like sexual objects first, and employees second. Specifically, Plaintiff and other similarly situated employees experienced weekly harassment that occurred for years including but not limited to visual harassment of a sexual nature, being subjected to unwelcome sexual advances, experiencing epithets, derogatory comments, and slurs. Women were forced to adhere to Patangay's sexual appearance requirements in order to avoid being harassed, humiliated, and forced to perform menial tasks. Moreover, if a woman failed to abide by Patangay's sexually harassing beauty standards, she was professionally blocked from business decision-making process and advancement opportunities, despite being held to higher standards in fear of retaliation. Defendant created a hostile work environment that was so severe as to drive women from their positions.

Separately and independently, the Motion also fails because the agreement is both procedurally and substantially unconscionable. Specifically, the purported agreement requires Plaintiff to:

- pay costs, expenses, and attorney's fees incurred in connection with a motion to compel arbitration;

---

[1] Having already had the opportunity to address the clarified allegations in the Motion, Defendant may not now sandbag Plaintiff by addressing those allegations for the first time in its reply brief.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**

- arbitrate claims which cannot be compelled to arbitration as a matter of law, such as sexual harassment/assault claims;

- waive the legally unwaivable right to bring representative claims for recovery of civil penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA," codified as Labor Code § 2698, et seq.); and

- arbitrate claims arising wholly outside of the employment relationship and for indefinite duration.

All of these unconscionable terms pertain to the central purpose of the purported agreement, i.e., the resolution of legal claims, but taint that purpose with illegality, warranting non-enforcement of the agreement. The Court should deny the Motion.

## II    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On May 14, 2026, the Court allowed Plaintiff to file an amended complaint in response to Defendant's initial Motion to Compel Arbitration. [ECF No. 25.] In complying with the Court's Order, Plaintiff filed her FAC adding enormous level of details including several examples, and details to further support her already pled harassment claims. [ECF No. 26.] Despite this, Defendant filed a Notice Regarding Motion to Compel Arbitration, Strike Allegations, and Stay Proceedings, and rested on their existing papers. [ECF No. 29.]

Plaintiff began working for Chan Zuckerberg Initiative, LLC ("CZI") on or around March 25, 2019. [ECF No. 21.1, ¶ 3.] On December 26, 2018, as part of her onboarding, Vikki Lampton with recruiting sent her several documents including an offer letter, non-disclosure agreement, confidentiality protection certification, and apparently an arbitration agreement, and was instructed to sign it. [*Id.* at ¶ 4, Exhibit A.] Defendant failed to ask her if she had any questions about any of the documents, or inform her who to ask questions to if she had any. [*Id.* at ¶ 5.] Defendant also failed to inform her that signing the purported agreement was voluntary, and in fact understood that signing these documents was a mandatory condition of employment. [*Id.*] At no point was Plaintiff ever given the opportunity to negotiate or change the terms of any document that she was required to sign. [*Id.* at ¶ 6.] When the agreement was signed, Plaintiff was unaware that arbitration required her to give up her constitutional right to a jury trial. [*Id.* at ¶ 7.] Had Plaintiff known what she was signing or understood what she was signing, she never would have signed the agreement, thus making it mandatory. [*Id.* at ¶ 8.]

## III    THE EFAA PRECLUDES COMPELLING THIS ACTION TO ARBITRATION

### A.    Plaintiff's Harassment Allegations

Plaintiff's ninth cause of action is a claim for Hostile Workplace Environment pursuant to Government Code §§ 12940 (a) and 12926 (o)) and is premised on the ***repeated, pervasive, and severe***

sexual harassment that she suffered. [*Id.*]

In support, Plaintiff alleges numerous examples of facts[2] establishing her sexual harassment claim, particularly at this early pleading stage:

**1.    Defendant Patangay Viewed Women as Sexual Objects First and Employees Second**

- Patangay made repeated, severe, pervasive, and unwelcome sexually harassing comments to Plaintiff and other similarly situated women. Patangay made unwelcome sexual comments and engaged in harassment of a sexual nature. CZI as a matter of policy and despite numerous complaints from plaintiff and other women, took no corrective action. [ECF No. 26 at ¶ 23.]

- Specifically, during their weekly one-on-one meetings, Patangay sexually harassed Plaintiff if she did not dress and act in a "sexy" manner. He repeatedly told her to wear makeup for their meeting, even going so far as to require her to use an AI Zoom makeup feature to make her appear to be wearing make up even if she was not. The days that she did wear makeup to their meetings; he would ask if it was the AI zoom makeup. [*Id.* at ¶ 24.]

- Further, Patangay repeatedly discussed the appearances of other female employees in a sexual nature during Plaintiff's one-on-one meetings. Patangay repeatedly compared the appearances of women to those of sexualized cartoon characters such as Japanese anime schoolgirls as well as highly sexual comic characters such as Harley Quinn and Jessica Rabbit. Patangay continued to make them at least weekly for years. Again, Plaintiff requested these comments stop yet Defendant did nothing. [*Id.* at ¶ 25.]

- Patangay would invite female employees who adhered to his sexualized appearance standards to outside one-on-one dinners to discuss inappropriate personal matters and continue the conversations through late-night text messages. It was only by attending these work dinners that a woman could find out key company and business decisions, otherwise they would be left out of the loop regarding business plans or promotions. Patangay withheld such information from Plaintiff because she refused to abide by his sexually harassing beauty standards. Those who did agree to these private dinners were promoted at a much quicker rate. [*Id.* at ¶ 26.]

- When women appeared to have a change in appearance, sexual orientation, or marital status, Patangay would openly criticize them, call them names such as a lesbian in the workplace, comment on their weight gain, and openly criticize their work. Moreover, Patangay would use these personal traits to state that they are less attractive as a woman and communicate that only a sexy heterosexual woman could be considered to be doing a good job in his eyes. [*Id.* at ¶ 27.]

**2.    Those Women Who Did Not Submit Themselves to Patangay's Sexual Appearance Requirements were Harassed, Humiliated and Forced to Perform Embarrassing Menial Tasks**

- Patangay spoke to women in a patronizing, condescending, dominating, and infantilizing manner, calling them names such as pushy, emotional, telling them to go to bed, and stupid

---

[2] Defendant has elected to forego formal challenges to Plaintiff's Complaint through demurrer or motion to strike yet improperly argues against the sufficiency of pleading in their Motion. Plaintiff construes this as acknowledgement that the Complaint is sufficiently well-pleaded to be insulated from such challenge.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**

if they did not comply with his harassing beauty standards. Patangay made it clear that only seek, sexy, subservient women could be seen as respectable in his eyes, and only certain women were worthy of verbal abuse. [*Id.* at ¶¶ 28-31.]

- Patangay engaged in inappropriate surveillance of female employees' personal lives through social media. Patangay made it clear that he was tracking their sexual appearance both in and outside of work, and they had to be sexy to be seen as doing a respectable job. [*Id.* at ¶ 30.]

- Female employees were viewed as only suited for administrative support and sexualized treatment and were required to perform menial administrative tasks outside of their job description including but not limited to fetching coffee, ordering dinner, and ordering swag. Specifically, female employees that did not adhere to Patangay's beauty standards were excluded from the business decision-making process and advancement opportunities, despite being held to higher standards in fear of retaliation. [*Id.* at ¶¶ 32-38, 41.]

- Plaintiff was compensated substantially less than male subordinates who reported to her despite holding a higher-level leadership position with broader managerial responsibilities and superior performance metrics." [*Id.* at ¶ 42.]

- Despite multiple written and oral complaints by women to human resources and leadership about this ongoing harassment and their inability to feel safe at work, failed to take effective corrective action. Rather women were told that their reputation was on the line for making these complaints. Several female employees sought transfers, medical leave, or separation from employment following exposure to the hostile working environment. [*Id.* at ¶¶ 39, 43-45.]

- Overall, Defendants created a volatile, unpredictable work environment that caused severe emotional and psychological distress to which multiple colleagues likened to an abusive relationship. [*Id.* at ¶ 45.]

As alleged in the Complaint: "***Defendants' acts and omissions constitute unlawful and discriminatory employment practices because of Plaintiff's sex/gender in violation of Government Code § 12900, et seq.***" [*Id.* at ¶ 148] (emphasis added).] In other words, and as will be discussed in more detail below, Plaintiff has more than sufficiently stated her sexual harassment claim. The EFAA is plainly applicable to this action and Defendant's Motion must fail.[3]

**B.    Since Plaintiff Alleges Sexual Harassment the EFAA Precludes Enforcement of the Agreement as to Plaintiff's Entire Action.[4]**

In *Doe v. Second Street Corp.* (2024) 105 Cal.App.5th 552, the Second District, Division Three, concluded that when a plaintiff employee asserts sexual harassment related claims, the plaintiff's other causes of action are also exempt from mandatory arbitration under the EFAA, because they are part of the same "case." (*Id.* at 560.) Relying on the analysis of earlier federal court decisions, *Second Street* held:

---

[3] In addition to the claims listed, Plaintiff alleges individual claims for retaliation under FEHA; and (2) retaliation in violation of Labor Code section 1102.5 stemming from Plaintiff's complaints about unfair pay practices based on sex/gender.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**

> [T]he EFAA facially applies to "*a case* which ... relates to the sexual assault dispute or the sexual harassment dispute." (9 U.S.C. § 402(a), italics added.) ***By its plain language, then, the statute applies to the entire case, not merely to the sexual assault or sexual harassment claims alleged as a part of the case***. It is significant, moreover, that the statute does not require that the pendant claims *arise out of* the sexual assault or sexual harassment dispute; it is enough that the case *relates to* the sexual assault or sexual harassment claims.

(*Id*. at 557 (emphasis added) (*citing Johnson v. Everyrealm, Inc*. (S.D.N.Y. 2023) 657 F.Supp.3d 535, 561.)

The *Second Street* Court specifically noted that *Johnson* has been widely followed in the federal courts including those of the Northern District (*See e.g., Turner v. Tesla, Inc. (N.D. Cal. 2023) 686 F.Supp.3d 917, 925*; *Watson v. Blaze Media LLC* (N.D. Tex., Aug. 3, 2023) No. 3:23-CV-0279-B) 2023 WL 5004144, p. *2; *Olivieri v. Stifel, Nicolaus & Co*. (2d Cir. 2024) 112 F.4th 74, 92; *Newton v. LVMH Moet Hennessy Louis Vuitton Inc*. (S.D.N.Y., Aug. 23, 2024), No. 23-CV-10753 (LAP)) 2024 WL 3925757, p. *7; *Baldwin v. TMPL Lexington LLC* (S.D.N.Y., Aug. 19, 2024) No. 23 Civ. 9899 (PAE)) 2024 WL 3862150, p. *7; *Arouh v. GAN Ltd. (C.D. Cal. Mar. 22, 2024, No. 8:23-cv-02001-FWS) 2024 WL 3469032*, p. *6.) Conversely, *Second Street* explicitly rejected the contrary authority (*Mera v. SA Hospitality Group, LLC* (S.D.N.Y. 2023) 675 F.Supp.3d 442) which limited application of the EFAA to those claims relating to sexual harassment and ordered the plaintiff's wage and hour claims to arbitration. (*Second Street* at 576-577.) One week after the issuance of *Second Street*, the Second District, Division One rendered its decision in *Liu v. Miniso Depot CA, Inc*. (2024) 105 Cal.App.5th 791, which trod the same ground as *Second Street*:

> We agree with our colleagues in Division Three of this appellate district, who recently concluded in *Doe v. Second Street Corp*. (2024) 105 Cal.App.5th 552 … that the plain language of the ***EFAA exempts a plaintiff's entire case from arbitration*** where the plaintiff asserts at least one sexual harassment claim subject to the act.

(*Miniso Depot* at 796 (emphasis added).)  The key to both the *Second Street* and *Miniso Depot* decisions is that the plain language of the EFAA, at 9 U.S.C. section 402(a), which provides that "at the election of the person alleging conduct constituting a sexual harassment dispute, no pre-dispute arbitration agreement ... shall be valid or enforceable **with respect to a case** which is filed under ... [s]tate law and relates to ... the sexual harassment dispute." (§ 402(a) (emphasis added).)  Clearly, by using "case," the statutory language evinces legislative intent that the EFAA does not simply apply to specific claims alleging or relating to sexual harassment or assault, but *any action* in which those claims are presented.  The instant matter is such a case. (*Second Street*, 105 Cal.App.5th at 557; *See Turner,* 686 F.Supp.3d at 925-26.)

### C.    Plaintiff Has Sufficiently Plead a Sexual Harassment Claim.

In evaluating whether EFAA preclusion applies, the Court's only task is to assess whether the allegations in the complaint, ***taken as true***, state a ***plausible*** claim of sexual harassment. (*Sharp v.*

10

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**

*S&S Activewear, L.L.C.* (9th Cir. 2023) 69 F.4th 974.) Contrary to Defendant's arguments in the Motion, courts have rejected any heightened pleading standard for sexual harassment claims, and courts must evaluate the totality of the circumstances rather than examining specific allegations in isolation (*Thomas v. Regents of University of California* (2023) 97 Cal.App.5th 587.) Under the below standards, Plaintiff more than meets her burden and Defendant's motion must be denied.

In *Beyda v. City of Los Angeles* (1998) 65 Cal.App.4th 511, the Court wrote "a reasonable person may be affected by knowledge that other workers are being sexually harassed in the workplace, even if he or she does not personally witness that conduct." (65 Cal.App.4th at 519., see also *Pantoja v. Anton* (2011) 198 Cal.App.4th 87.—evidence of harassing conduct occurring outside plaintiff's presence was sufficient to support a claim for sexual harassment. (198 Cal.App.4th at 109.) "One who has been personally subject to sexual harassment may introduce evidence of the harasser's sexual misconduct toward others, of which she becomes aware during her employment, even if the other acts occurred outside of the Plaintiff's presence." (*E.E.O.C. v. California Psychiatric Transitions, Inc.* (E.D. Cal. 2009) 644 F.Supp.2d 1249, *21.) *Sandoval v. American Bldg. Maintenance Industries, Inc.* (8th. Cir. 2009) 578 F.3d 787 held that although secondhand harassment evidence cannot be used to prove the plaintiffs found their workplace subjectively hostile, "it is highly relevant to prove the sexual harassment was severe and pervasive and that ABMK had constructive notice." (578 F.3d at 803.)

The Northern District in *Ding v. Structure Therapeutics Inc.* (2024) 755 F.Supp.3d 1200, held that "If a plaintiff plausibly pleads a sex-based hostile work environment claim under California law, she pleads a sex harassment dispute within the meaning of the End Forced Arbitration Act (EFAA)." "California law defines sexual harassment as "'harassment' because of sex" and it "includes sexual harassment, gender harassment, and harassment based on pregnancy, childbirth, or related medical conditions. Sexually harassing conduct need not be motivated by sexual desire." (*Ding,* 755 F.Supp.3d at 1213.)  A hostile work environment claim exists when "harassment has the purpose or effect of either interfering with the work performance of an employee or creating an intimidating workplace." (*Id., citing Beltran v. Hard Rock Hotel Licensing, Inc.*(2023) 97 Cal.App.5th 865, 878, 315 Cal.Rptr.3d 842 (quoting *Rieger v. Arnold* (2002) 104 Cal.App.4th 451, 459, 128 Cal.Rptr.2d

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**

295).), 459, 128 Cal.Rptr.2d 295).) "The Ninth Circuit has held that sexual harassment in hostile work environment claims can be created when the employer's actions are not facially sex- or gender-related. (*Ding,* 755 F.Supp.3d at 1214, citing *E.E.O.C. v. Nat'l Educ. Ass'n, Alaska,* (9th Cir. 2005) 422 F.3d 840, 844-847*; see also Cozzi v. County of Marin* (N.D. Cal. 2011) 787 F.Supp.2d 1047 (explaining that in National Education Association of Alaska "[t]he Ninth Circuit found that the supervisor's behavior, while not on its face sex-or gender-related, nonetheless met the 'severe and pervasive' test for the case to survive summary judgment.").)  Consistent with  the Judicial Council of California Civil Jury Instructions (CACI) 2521 A to establish this claim, a Plaintiff must prove; (1) they were subjected to harassing conduct because they were a protective status (a woman); (2) that the harassing conduct was severe or pervasive, and (3) that Plaintiff considered the work environment to be hostile, intimidating, offensive, oppressive, or abusive. (*Ding,* 755 F.Supp.3d at 1214.) Plaintiff has plainly done so.

### D.    The Facts Alleged by Plaintiff More Than Meet the Required Sexual Harassment Standards

*Ding v. Structure Therapeutics*, held that if a plaintiff plausibly pleads a sex-based hostile work environment claim, she pleads a sex harassment dispute within the meaning of the EFAA (755 F.Supp.3d 1200.) In *Ding*, the plaintiff was not provided with sole responsibilities despite being a Chief Financial Officer, and her responsibilities were narrowed to outside job duties such as reading and listening, and tasks relating to business devolvement and investor outreach. (*Id*. at 1213.) Moreover, the plaintiff was called aggressive, sensitive, lectured, pressured not to attend executive meetings, and recommended termination of her employment. (*Id*. at 1213-14.) The Court drew all reasonable inferences in the plaintiff's favor in support of a finding of sexual harassment that polluted the workplace, making it more difficult (or in some instances impossible) to do her job. (*Id*. at 1214.) In sum, the Court found that the plaintiff plausibly plead a hostile work environment claim by alleging Defendants' gendered conduct interfered with her ability to fulfill her role as a Chief Financial Officer, and as such, adequately alleged a "sexual harassment dispute" such that the EFAA covers Plaintiff's claim. (*Id*.)

Exactly like the plaintiff in *Ding* and arguably more pervasive, female employees were viewed as only suited for administrative support and sexualized treatment. [*Id.* at ¶¶ 32-38, 41.] Specifically, like

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**

*Ding*, women were required to perform menial administrative tasks outside of their job description including but not limited to fetching coffee, ordering dinner, and ordering swag. [*Id.*] Female employees that did not adhere to Patangay's beauty standards were excluded from the business decision-making process, promotions, and advancement opportunities. [*Id.*] Moreover, Plaintiff and other similarly situated women were also called names like those in *Ding*, and arguable more severe. For example, Patangay spoke to women in a patronizing, condescending, dominating, and infantilizing manner, calling them names such as pushy, emotional, telling them to go to bed, and stupid if they did not comply with his harassing beauty standards. [*Id.* at ¶¶ 28-31.]

Outside of the sexualized commentary when women appeared to have a change in appearance, sexual orientation, or marital status, Patangay would openly criticize them, call them names such as a lesbian in the workplace, comment on their weight gain, and openly criticize their work. [*Id.* at ¶ 27.] Lastly, like *Ding* where the plaintiff expressed physical injuries sustained during a domestic violence incident, here, following a severe medical emergency, Plaintiff experienced materially adverse discriminatory and harassing changes to the terms and conditions of her employment as well as disparaging comments were made about Plaintiff's gender and disability. (*Id.* at 1213-14.) [See ECF No. 26.]

It is beyond clear that Defendant's unlawful and sexually harassing actions polluted the workplace, making it both difficult impossible to do their job as several female employees sought transfers, medical leave, or separation from employment following exposure to the hostile working environment. [*Id.* at ¶¶ 39, 43-45.] The emotional toll was so acute that Plaintiff reduced to crying daily, and her and another woman colleague frequently wept together during Zoom calls to cope with the ongoing hostility. [*Id.* at ¶ 45.] As such, Plaintiff has more than established that the harassment she endured was severe and pervasive, and that the work environment was hostile, intimidating, offensive, oppressive, and abusive pursuant to *Ding*.

Moreover, Plaintiff is able to show that she had first-hand knowledge of sexual harassment occurring not only to her, but to other women that worked for Defendant which under *Beyda* 65 Cal.App.4th 511, is sufficient to contribute to a finding of sexual harassment in the workplace.

E.    **Even The Authorities Cited By Defendant Support Denial of Their Motion**

The authority cited by Defendant in its initial motion in fact *supports* the denial of its cavalierly short shrift renewed motion. The Court in *Van De Hey v. EPAM Systems, Inc.* (N.D. Cal. Feb. 28, 2025) 2025 WL 829604 held that a plaintiff could support EFAA preclusion if they were to allege that an incident or numerous incidents such as in this case "unreasonably interfered with [her] work performance or created an intimidating, hostile, or offensive working environment." (*Van De Hey*, WL 829604 *5.)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**

The plaintiff's claims in *Van De Hey*, unlike here, did not plausibly amount to harassment because "one or two comments are not sufficient" and "pay and promotions do not themselves constitute harassment within the meaning of the FEHA." [ECF 19, 8:2-24.] Here, Plaintiff's FAC alleges severe, pervasive, inappropriate, derogatory, and unwelcome sexually harassing comments as well as and visual harassment of sexual nature to Plaintiff and other similarly situated women that occurred ***every single week for years***. [ECF No. 26 at ¶¶ 23-25.] By way of example, sexual and harassment comments were made regarding appearance, makeup, feminine standards of attractiveness, comparisons to sexual cartoons, sexual orientation, martial status, weight, women being pushy, emotional, and stupid, that meek and subservient women can only be respected, tracking of sexual physical appearance when in and out of the office, etc. [ECF No. 26.] Plaintiff has explained and elaborated regarding examples of ***many more*** than 3 "sporadic" incidents and rather provided concrete examples of the repeated and pervasive comments and harassment that she and similarly situated women experience, leading to the creation of an intimidating, hostile, and offensive working environment. The abuse and harassment that Plaintiff and other women endured was so pervasive that it created a volatile, unpredictable work environment that caused severe emotional and psychological distress, and an overall intimidating, hostile, and offensive working environment. [ECF No. 26 at ¶ 45.] Thus, under the standards set out in *Van De Hey,* Plaintiff more than meets the requirements to allege a valid harassment claim.

To the contrary plaintiff in *Van De Hey* also only highlighted three incidents (ie: commentary that Asians have small hands; making a comment that women are emotional; and a comment about not wanting to risk losing a male employee that made more than her) that did not rise to the level of sexual harassment within the totality of the circumstances and rather was sporadic and incidental. (*Id.* at *4-*5.) The Court also notes that the plaintiff does not state whether the harassing comments occurred more than twice during her two years of employment, "or provide any other information about the pervasiveness of the alleged harassment." (*Id*.) The court further found that the plaintiff could not show that the incident "unreasonably interfered with [her] work performance or created an intimidating, hostile, or offensive working environment." (*Id.*) The facts of *Van De Hey* thus do not compare to those of this case.

Next, Plaintiff is able to meet the standard under *Johannessen v. JUUL Labs, Inc*. (N.D. Cal. June 24, 2024) 2024 U.S. Dist. LEXIS 110903 to establish a claim for sexual harassment. First, the *JUUL Labs, Inc.* plaintiff did not allege hostile work environment as Plaintiff does in this action (*JUUL Labs, Inc.* at *4.) However, the Court stated that in order for a plaintiff to have plausibly allege sexual harassment, it must show that they "are subjected to unwelcome sexual advances or experienced "epithets, derogatory comments or slurs" on the basis of her gender or pregnancy" and/or alleges "physical or visual harassment of a sexual nature." (*Id*.) The plaintiff in *JUUL Labs, Inc.'s* claims arise

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**

only from allegations that their job duties were changed after coming back from maternity leave; not included in some meetings, reassigned to a different manager, and provided with a lactation room with inadequate privacy. *(Id.* at *5.)* Again, the present case is vastly different than *JUUL Labs, Inc.*, in the level and frequency of harassment that Plaintiff endured is non-comparable. In using the definition laid out in *JUUL Labs, Inc.*, Plaintiff has alleged and experience both "**visual harassment of a sexual nature" and was "subjected to unwelcome sexual advances or experienced "epithets, derogatory comments or slurs."** *(Id.* at *4.)*

Specifically, as to visual harassment, Plaintiff and other similarly situated women such as weekly comments telling her to wear makeup, leering in a sexual manner, commenting, or questioning on the lack of makeup, and suggesting Plaintiff use the AI zoom makeup feature to ensure that she maintain a feminine standard of attractiveness in meetings with him. [ECF No. 26 at ¶¶ 24-25.] Another example is that Patangay communicated that Plaintiff and other women had to be sexy both in and out of the office to be seen as doing a respectable job in his eyes. [*Id.* at ¶ 30.] By way of further example, Patangay called a women employee a lesbian in the workplace, criticized her for no longer dating men, commented surprisingly and disparagingly on her weight gain, and stating that her weight gain made her less sexually attractive as a woman, and also communicating that only a sexy heterosexual woman could be considered to be doing a good job in his eyes. [*Id.* at ¶ 27.] Plaintiff has sufficiently established visual harassment of a sexual nature.

Next, as to unwelcome sexual advances or experienced epithets, derogatory comments or slurs, on a weekly basis for years, Patangay repeatedly and pervasively told Plaintiff and another woman employee that they looked "anime," inappropriately invoking the image of a Japanese schoolgirl cartoon and comparing her to highly sexualized female characters such as Harley Quinn and Jessica Rabbit, which is a slur and epithet. [*Id.* at ¶ 25.] Despite Plaintiff asking him to stop, he continued to make these comments and expressly communicated that Plaintiff would be treated better if she looked sexier and more feminine. [*Id.*] Patangay also communicated both expressly and implicitly that Plaintiff would be treated better if she looked sexier and more feminine, which is a sexual advance. [*Id.* at ¶ 26.] In addition to the derogatory comments above, Patangay used a patronizing and condescending tone with Plaintiff and other women employees and not male employees, including but not limited to, yelling at them in an aggressive manner and undermining their capability, and also spoke to them in a dominating and infantilizing manner telling Plaintiff to go to sleep on several occasions. [*Id.* at ¶¶ 28-31.] By way of last example (except several more can be found in the Operative Complaint which are illustrative and non-exhaustive) Patangay communicated that only women were worthy of verbal abuse while men were not. [*Id.* at ¶ 29.] As such, unlike the plaintiff in *JUUL Labs, Inc.*, Plaintiff has more than established a

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**

plausible claim for sexual harassment.

Lastly, Plaintiff's allegations as to Defendant failing to prevent harassment also forms a basis for EFAA preclusion. For example, in *Turner* 686 F.Supp.3d 917, the Court found that where an employee alleged that their employer "failed to take all reasonable steps to prevent harassment and discrimination, resulting in her sexual harassment by coworkers was sexual harassment-based claim" the entire case was exempted from arbitration under the EFAA. (*Turner* at [15].) Similarly, here Plaintiff and other women reported the discrimination and harassment that they were enduring on multiple occasions, both orally and through written complaints, and was advised that complaints could negatively affect her professional reputation and performance evaluations. [ECF No. 26 at ¶¶ 23, 44, 46.] Defendant failed to take any reasonable steps to prevent further harassment resulting in discriminatory and retaliatory conduct to continue and substantially contributed to Plaintiff's injuries. [ECF No. 26 at ¶¶ 43, 182-183.] The Court should follow the same analysis here as in *Turner*.  In sum, Plaintiff has sufficiently pleaded claims and supporting facts to bring this action within the coverage of the EFAA, and consequently, Defendant's Motion must fail.[5]

## IV      THE PURPORTED AGREEMENT IS IREDEEMABLY UNCONSCIONABLE.

 "Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.'" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (quoting *Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83, 114). "Instead, they are evaluated on '"a sliding scale."' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable. [Citation.] Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required." (*OTO*, 8 Cal.5th at 125 (quoting *A&M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 487).)

### A.      Procedural Unconscionability.

In assessing procedural unconscionability, courts focus on two factors: oppression and surprise. (*Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 631.) Oppression arises from an inequity of bargaining power which results in no real negotiation and "'an absence of meaningful choice.'" (*Id*.) Surprise involves the extent to which "the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." (*A&M Produce Co.*, 135 Cal.App.3d at 486.) A showing or either oppression or surprise may render a contract procedurally

---

[5] In the event the Court finds that Plaintiff did not plausibly plead a sexual harassment claim, Plaintiff shall be able to move to lift the stay in federal court in order to re-litigate the motion to compel arbitration. *Van De Hey* WL 829604 at *3.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**

unconscionable. (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89 (oppression not required if surprise proven); *Nyulassy v. Lockheed Martin* Corp. (2004) 120 Cal.App.4th 1267, 1281 (surprise not necessary if oppression shown).) Here, the purported arbitration agreement is both oppressive and surprising, rendering it highly procedurally unconscionable.

First, the purported agreement is adhesive in nature. Fitting the classic definition of an adhesion contract, it was written on a preprinted form and offered by the party with superior bargaining power on a take-it-or-leave-it basis. (*OTO*, 8 Cal.5th at 126 (describing adhesion contracts and noting "[a]rbitration contracts imposed as a condition of employment are typically adhesive.").) That alone evidences "'a degree of procedural unconscionability.'" (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244.) As the California Supreme Court has observed multiple times in discussing mandatory arbitration agreements in the employment context, "'the economic pressure exerted by employers on all but the most sought-after employees may be particularly accurate, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.'" (*OTO*, 8 Cal.5th at 127 (citing *Armendariz*, 24 Cal.4th at 115).)

Next, other considerations further evidence oppression. Defendant neither explained the purported agreements contents nor its significance to Plaintiff. (See *OTO,* 8 Cal.5th at 127 (finding these details evidence oppression); see also ECF No. 21.1, ¶¶ 5-7.) Plaintiff was simply sent the purported agreement along with several other documents and instructed to sign them as a part of her onboarding process and for employment. [*Id.* at ¶ 4, Exhibit A.] Defendant failed to ask her if she had any questions about any of the documents or inform her who to ask questions to if she had any. [*Id.* at ¶ 5.] Defendant also failed to inform her that signing the purported agreement was voluntary. [*Id.*] At no point was Plaintiff ever given the opportunity to negotiate or change the terms of any document that she was required to sign. [*Id.* at ¶ 6.] When the agreement was signed, Plaintiff was unaware that arbitration required her to give up her constitutional right to a jury trial. [*Id.* at ¶ 7.] Had Plaintiff known what she was signing or understood what she was signing, she never would have signed the agreement. [*Id.* at ¶ 8.]

Considering this evidence together, there is a substantial degree of procedural unconscionability.

**B.    Substantive Unconscionability**.

In *Cook v. University of Southern California* (2024) 102 Cal.App.5th 312, the court upheld the trial court's determination that an arbitration agreement between an employee and employer was unenforceable, where, as here: (1) the agreement was substantively unconscionable for lack of mutuality in claims that were subject to arbitration; and (2) the broad scope of the arbitration agreement was substantively unconscionable.

**1.      Imposition of Fees.**

The purported agreement is unconscionable because it seeks to impose costs upon Plaintiff that she would otherwise not be required to bear if she was free to bring her claims in court. Specifically, the agreement states, "the responding party…….shall be entitled to recover from the initiating party all costs, expenses, and attorney's fees incurred as a result of the Non-Arbitral Proceeding, including all costs, expenses, and attorney's fees incurred in connection with a motion or petition to compel arbitration." [ECF 19.1, Exhibit 1, A, pp. 16.] "[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." (*Armendariz*, 24 Cal.4th at 110-111.) An employer can compel arbitration of a claim only if the arbitration agreement "'"does not require employees to pay . . . any arbitrators' fees or expenses as a condition of access to the arbitration forum."'" (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 504.) "[T]he risk that a claimant may bear substantial costs of arbitration . . . may discourage an employee from exercising the constitutional right of due process." (*Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, 116. "The mere inclusion of the costs provision in the arbitration agreement produces an unacceptable chilling effect . . ." (*Id.* at 117.). As such, this provision renders the agreement substantively unconscionable.

### 2.    Inclusion of Non-Arbitrable Claims.

The purported arbitration agreement is substantively unconscionable because it fails to carve out sexual harassment and assault claims from compelled arbitration. The purported arbitration agreement's broad coverage "applies to all claims" without any carve-out, and the agreement must be read to require arbitration of sexual harassment and assault claims. [ECF 19.1, Exhibit 1, A, pp. 15.] Defendant could have easily carved out these prohibited claims like they did with workers' compensation and ERISA claims.

The EFAA, in contrast to the FAA, demonstrates Congress' preference that plaintiffs alleging sexual harassment be permitted to be heard in court and not be compelled to arbitration.  (*Turner*, 686 F.Supp.3d at 925.)   In general terms, the EFAA renders arbitration agreements unenforceable at the plaintiff's election in sexual assault and sexual harassment cases. (*Doe v. Second Street Cor* (2024) 105 Cal.App.5th 552, 559.) The *Second Street* Court observed of the EFAA:

> Over the past several decades, forced arbitration clauses have become virtually ubiquitous in everyday contracts. Often buried deep within the fine print of employment and consumer contracts, forced arbitration deprives millions of Americans of their day in court to enforce state and federal rights. Because arbitration lacks the transparency and precedential guidance of the justice system, there is no guarantee that the relevant law will be applied to these disputes or that fundamental notions of fairness and equity will be upheld in the process. Furthermore, due to the secretive nature of this system, these disputes are often shielded from public scrutiny… [the EFAA] would restore access to justice for millions of victims of sexual assault or harassment who are currently locked out of the court system

18

and are forced to settle their disputes against companies in a private system of arbitration that often favors the company over the individual.

(*Id*. at 565 (quoting from The House Judiciary Committee's Report on the EFAA).)  Thus, the EFAA represents Congressional action to address (1) the need to protect employees' civil and due process rights, and (2) perceived failings of the arbitral system.  Defendant's election to continue including harassment among covered claims under the purported agreement after the EFAA became effective, without specifying sexual harassment and assault claims are excepted under the EFAA, can only be construed as an effort to take advantage of the disparity in business and legal knowledge between Defendant and Plaintiff, by unreasonably putting the onus upon Plaintiff to be well-versed as to statutory rights, rather than presenting arbitration terms which are fair, accurate and legal.  This is unconscionable.

> **3.**      **Blanket Collective Action Waiver Inclusive of Representative PAGA Claims**

The purported agreement states: "You and the Company both waive the right to have a jury trial for all employment-related disputes, as well as waiving the right to pursue, or participate in, any class action, collective action, or other form of representative action concerning all employment-related disputes." [ECF 19.1, Exhibit 1, A, pp. 15.] This broad proscription against any representative action fails to carve out representative actions for civil penalties under the Private Attorneys General Act ("PAGA", codified at Labor Code section 2698 et seq), such that the agreement must be read to include PAGA actions within its coverage.

The California and federal Supreme Courts, as well as the subordinate courts below them, have uniformly found representative PAGA claims cannot be compelled into contractual arbitration or barred by arbitration agreements, beginning with *Iskanian v. CLS Transportation Los Angeles LLC* (2014) 59 Cal.4th 348, followed by *Kim v. Reins International California, Inc*. (2020) 9 Cal.5th 73, *Viking River Cruises Inc. v. Moriana* (2022) 596 U.S. 639 and *Adolph v. Uber Technologies Inc*. (2023) 14 Cal.5th 1104, as well as the host of cases relying on those high court decisions. It is simply naïve to believe that business entities knowledgeable and experienced enough to include a representative action waiver in an arbitration agreement would not be aware of this legal reality.

> **4.**      **Indefinite Scope**

While the purported agreement includes disputes relating to Plaintiff's employment, it is not limited to employment claims. There is no definition for covered disputes, and instead, the agreement covers "any dispute between You and the Company…..[and a myriad of third parties]…..that has arisen, *or may arise in the future*, from or *in connection with* Your employment with the Company ( or any of its affiliates) or the termination of Your employment with the Company." [ECF 19.1, Exhibit 1, A, pp 15.]  This indefinite scope is unconscionable because it requires Plaintiff "to arbitrate claims that are unrelated to [his] employment" with Defendant. (*Cook*, 102 Cal.App.5th at 321.) The arbitration

19

agreement held to be unconscionably overbroad in *Cook* similarly applied to "all claims, whether or not arising out of Employee's University employment, remuneration or termination, that Employee may have against the University or any of its related entities, including but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents, in their capacity as such or otherwise; and all claims that the University may have against Employee." (*Id.*) The court explained that, "[i]t is difficult to see how it is justified to expect Cook—as a condition of her employment at the university—to give up the right to ever sue a USC employee in court for defamatory statements or other claims that are completely unrelated to Cook's employment." (*Id.* at 325.) Once again, there is no reason the result should be different here.

### C. The Purported Agreement Is Unenforceable and Cannot Be Saved by Severance

The purported agreement should not be enforced under relevant standards of unconscionability as set forth in recent Supreme Court jurisprudence. In *Ramirez*, the Court moved away from a quantifying approach, tallying up the number of unconscionable terms in favor of an analysis which looks at whether the purpose of the agreement is tainted with illegality. The Court cautioned that even if severance is possible, the Court must consider if to do so would "condone an illegal scheme and if the defects in the agreement indicate that the stronger party engaged in." (*Id.* at 547.)

Here, the unconscionable terms show Defendant's intent to "game the system" in its favor by forcing Plaintiff into a substantially inferior forum in terms of fairness and efficacy of dispute resolution, to the Defendant's sole benefit. The Court should not enable this scheme.

## V  CONCLUSION.

For all of these reasons, Plaintiff respectfully asks the Court to deny Defendant's Motion in its entirety. Respectfully, Plaintiff firmly contends that such facts are sufficiently plead. Plaintiff has provided vast amounts of exemplary details that are plainly more than sufficient, and in any event is by no means required to spell out each and every instance of sexually harassing conduct in detail at this early pleading stage.  However, should the court be inclined to grant Defendant's motion based on any lack of certain alleged facts, Plaintiff requests she be granted leave to amend her complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

Respectfully submitted,

Dated: July 9, 2026                 **WILSHIRE LAW FIRM**

By : */s/ Eugene Zinovyev*_____
        John G. Yslas | Eugene Zinovyev
        John Brown | Emily Borman
        Gabriella Sole

Attorneys for Plaintiff

20

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**