ELIZABETH A. BROWN (SB# 235429)
TERESA W. GHALI (SB# 252961)
JEN CORNELL (SB# 320529)
RYAN C. KING (SB# 351149)
GBG LLP
lisabrown@gbgllp.com
teresaghali@gbgllp.com
jencornell@gbgllp.com
ryanking@gbgllp.com
601 Montgomery Street, Suite 840
San Francisco, CA  94111
Telephone:  (415) 603-5000
Facsimile:  (415) 840-7210

Attorneys for Defendants
CHAN ZUCKERBERG INITIATIVE, LLC
and GIRISH PATANGAY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE SITEMAN, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHAN ZUCKERBERG INITIATIVE, LLC, a Limited Liability Company; GIRISH PATANGAY, an individual, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 3:26-cv-02362-JD<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION, STRIKE CLASS ALLEGATIONS, AND STAY PROCEEDINGS**<br><br>Date:  August 6, 2026<br>Time:  11:00 a.m.<br>Judge:  Hon. James Donato<br>Courtroom:  11, 19th Floor |

**Table of Contents**

I.     INTRODUCTION ........................................................................................................ 6

II.    THE EFAA DOES NOT CONTROL. ....................................................................... 7

       A.    Plaintiff's New Allegations Still Do Not Plausibly Allege Sexual
             Harassment. ................................................................................................... 7

             1.    Plaintiff's Amended Allegations Are Based on the Same Basic Set
                   of Facts, Merely Couched in More Inflammatory Language...................... 7

             2.    The Cases Are in Accord. .......................................................................... 11

       B.    Plaintiff's Claims Must Proceed on an Individual Basis in Arbitration. ............. 12

III.   THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE. ......................... 13

       A.    Plaintiff Has Not Shown Procedural Unconscionability........................................ 13

       B.    The Agreement Is Not Substantively Unconscionable. ........................................ 14

IV.    CONCLUSION ............................................................................................................ 15

# Table of Authorities

**Page(s)**

**Cases**

*Achal v. Gate Gourmet, Inc.*,
114 F. Supp. 3d 781 (N.D. Cal. 2015) ........................................................................................ 12

*Adolph v. Uber Techs., Inc.*,
14 Cal. 5th 1104 (2023) ............................................................................................................ 14

*Alexander v. Cmty. Hosp. of Long Beach*,
46 Cal. App. 5th 238 (2020) ..................................................................................................... 10

*Arouh v. GAN Ltd.*,
No. 8:23-cv-02001-FWS,
2024 WL 3469032 (C.D. Cal. Mar. 22, 2024) ............................................................................ 7

*Baldwin v. TMPL Lexington LLC*,
No. 23 Civ. 9899 (PAE), 2024 WL 3862150 (S.D.N.Y. Aug. 19, 2024) ................................... 12

*Baltazar v. Forever 21, Inc.*,
62 Cal. 4th 1237 (2016) ............................................................................................................ 14

*Beyda v. City of Los Angeles*,
65 Cal. App. 4th 511 (1998) ..................................................................................................... 10

*Cocom v. ABM Aviation, Inc.*,
No. 25-3246, 2026 WL 1793637 (9th Cir. June 23, 2026) ....................................................... 15

*Cook v. University of Southern California*,
102 Cal. App. 5th 312 (2024) ................................................................................................... 14

*Dotson v. Amgen, Inc.*,
181 Cal. App. 4th 975 (2010) ................................................................................................... 15

*E.E.O.C. v. Cal. Psychiatric Transitions, Inc.*,
644 F. Supp. 2d 1249 (E.D. Cal. 2009) ..................................................................................... 11

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) .................................................................................................................. 12

*Farrell v. Boeing Emps. Credit Union*,
No. 16-cv-02711-NC,
2019 WL 1980695 (N.D. Cal. May 3, 2019), *aff'd,* 965 F.3d 968 (9th Cir. 2020) ................... 13

*Fisher v. San Pedro Peninsula Hosp.*,
214 Cal. App. 3d 590 (1989) ...................................................................................................... 7

*Gal v. Meta Platforms Inc.*,
No. 25-cv-06110-JST, 2026 WL 1864073 (N.D. Cal. June 29, 2026) ...................................... 11

*Grabowski v. Robinson*,
817 F. Supp. 2d 1159 (S.D. Cal. 2011) .................................................................................. 15

*Haberman v. Cengage Learning, Inc.*,
180 Cal. App. 4th 365 (2009) ................................................................................................... 8

*Hoffman v. Red Wing Brands of Am., Inc.*,
No. 3:13-cv-0633-LRH-VPC, 2015 WL 3903627 (D. Nev. June 24, 2015) ........................... 10

*Hughes v. Pair*,
46 Cal. 4th 1035 (2009) ............................................................................................................. 7

*Janken v. GM Hughes Elecs.*,
46 Cal. App. 4th 55 (1996) ...................................................................................................... 10

*Johannessen v. Juul Labs, Inc.*,
No. 3:23-cv-03681-JD, 2024 WL 3173286, at *4 (N.D. Cal. June 24, 2024); ........................ 11

*Johnmohammadi v. Bloomingdale's, Inc.*,
755 F.3d 1072 (9th Cir. 2014) ................................................................................................. 12

*Kortan v. Cal. Youth Auth.*,
217 F.3d 1104 (9th Cir. 2000) ................................................................................................... 8

*Lambert v. New Start Cap. LLC*,
799 F. Supp. 3d 258 (S.D.N.Y. 2025), appeal withdrawn,
No. 25-2160, 2026 WL 654284 (2d Cir. Feb. 27, 2026) ......................................................... 13

*Lang v. Skytap, Inc.*,
347 F. Supp. 3d 420 (N.D. Cal. 2018) ..................................................................................... 15

*Lawler v. Montblanc N. Am., LLC*,
704 F.3d 1235 (9th Cir. 2013) ................................................................................................... 8

*Liu v. Miniso Depot CA, Inc.*,
105 Cal. App. 5th 791 (2024), *review denied* (Dec. 31, 2024),
*cert. denied*, 146 S. Ct. 107 (2025) ........................................................................................ 12

*Lyle v. Warner Bros. Television Prods.*,
38 Cal. 4th 264 (2006) ........................................................................................................ 8, 10

*McManus v. CIBC World Markets Corp.*,
109 Cal. App. 4th 76 (2003) .................................................................................................... 15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ................................................................................................................. 15

*OTO, L.L.C. v. Kho*,
8 Cal. 5th 111 (2019) .......................................................................................................... 13, 14

*Pantoja v. Anton*,
198 Cal. App. 4th 87 (2011) .................................................................................................... 10

*Poublon v. C.H. Robinson Co.,*
  846 F.3d 1251 (9th Cir. 2017)................................................................................................. 14

*Ramirez v. Charter Communications,*
  16 Cal. 5th 478 (2024) ........................................................................................................... 15

*Sandoval v. Am. Bldg. Maint. Indus., Inc.,*
  578 F.3d 787 (8th Cir. 2009).................................................................................................. 10

*Serafin v. Balco Props. Ltd., LLC,*
  235 Cal. App. 4th 165 (2015) ................................................................................................. 13

*Serpa v. California Sur. Investigations, Inc.,*
  215 Cal. App. 4th 695 (2013), as modified (Apr. 19, 2013)................................................... 15

*Tercero v. Sacramento Logistics LLC,*
  No. 2:24-CV-00953-DC-JDP, 2025 WL 43125 (E.D. Cal. Jan. 7, 2025) ............................... 14

*Trevino v. Acosta, Inc.,*
  No. 17-cv-06529 NC,
  2018 WL 3537885 (N.D. Cal. July 23, 2018)........................................................................ 13

*Trujillo v. N. Cnty. Transit Dist.,*
  63 Cal. App. 4th 280 (1998) ................................................................................................... 12

*Turner v. Tesla,*
  686 F.Supp.3d 917 (N.D. Cal. 2023) ...................................................................................... 12

*Van De Hey v. EPAM Sys. Inc.,*
  No. 24-cv-08800-RFL, 2025 WL 829604 (N.D. Cal. Feb. 28, 2025) ................................ 6, 11

*Vazquez v. Tommy Bahama R&R Holdings, Inc.,*
  No. 322CV01881JESKSC, 2023 WL 8264554 (S.D. Cal. Nov. 29, 2023)............................. 14

*Viking River Cruises, Inc. v. Moriana,*
  596 U.S. 639 (2022)................................................................................................................ 14

**Statutes**

2 California Code of Regulations § 11019(2) ................................................................................ 11

9 United States Code § 402 ........................................................................................................... 12

**Other Authorities**

168 Congressional Record S625 (2022) ........................................................................................ 13

## I.   INTRODUCTION

"Given the nature of sexual harassment disputes, in most cases plaintiffs with plausible claims will—**from the outset**—have sufficient information in their possession to state a claim for relief." *Van De Hey v. EPAM Sys. Inc.*, No. 24-cv-08800-RFL, 2025 WL 829604, at *3 (N.D. Cal. Feb. 28, 2025) (emphasis added).  Plaintiff has now submitted a **fourth** iteration of her sexual harassment allegations, adding even more strident language in a plain attempt to evade arbitration.   But there is still no basis for allowing Plaintiff's claims – including her unrelated class claims – to proceed in court.  The three central issues before the Court have not changed.

First, in her Opposition, Plaintiff plays fast and loose with her own allegations, injecting even more inflammatory language.  To be clear, nothing in the FAC suggests that Patangay ever made a sexual advance (or made any statements even remotely resembling one), ever used any "sexual appearance requirements," or ever "harassed, humiliated, and forced [women] to perform menial tasks" based on their appearance.  Opp'n at 6:18-23.  The exaggerated characterizations in Plaintiff's Opposition are merely attorney argument attempting to bolster Plaintiff's speculation and subjective view of workplace interactions.

Second, the key legal issue before the Court is unchanged -- whether Plaintiff's harassment claim, even if plausibly pleaded, allows the EFAA to apply to **her unrelated class claims**.  Plaintiff's Opposition adds no new arguments on this issue.  As before, Plaintiff has not cited any published California decision that supports applying the EFAA to unrelated class claims, and Defendants are aware of none.  The EFAA explicitly addresses only one type of class claim not present here – class claims for sexual harassment.  Allowing Plaintiff to circumvent a valid, enforceable class waiver by cobbling together an individual harassment claim would be an unprecedented extension of the EFAA that runs afoul of the statute.

Third, Plaintiff repeats the same long-refuted unconscionability arguments, wrong on both the facts and the law.  The Arbitration Agreement is enforceable, and, in any event, any unconscionable provisions (there are none) may be severed.[1]

---

[1] Defendants also object to Plaintiff's opposition on the basis that it violates Local Rule 3-4(c)(2), as each page contains no fewer than 33 lines of text, and most pages are single-spaced. Notwithstanding, Plaintiffs over-sized brief is unchanged on two of the three key legal issues – whether the EFAA applies to class claims and whether the Arbitration Agreement is enforceable; on those two issues, the Opposition repeats, verbatim, Plaintiff's prior Opposition.

## II.     THE EFAA DOES NOT CONTROL.

### A.     Plaintiff's New Allegations Still Do Not Plausibly Allege Sexual Harassment.

#### 1.     Plaintiff's Amended Allegations Are Based on the Same Basic Set of Facts, Merely Couched in More Inflammatory Language.

Plaintiff cites no law for her assertion that Defendants are prohibited from addressing her "clarified" allegations simply because Defendants rested on their prior Motion.  Defendants did so because the law applicable to Plaintiff's fourth bite of the apple is unchanged, and Plaintiff still has not stated a plausible harassment claim.[2]  Plaintiff must plausibly allege that the "totality of the circumstances" is "both objectively and subjectively offensive," and she has not done so. *Hughes v. Pair*, 46 Cal. 4th 1035, 1044 (2009) ("[T]he existence of a hostile work environment depends upon 'the totality of the circumstances. . . . To be actionable, a sexually objectionable environment must be both objectively and subjectively offensive,'" thus "a plaintiff who subjectively perceives the workplace as hostile or abusive will not prevail . . . if a reasonable person . . . considering all the circumstances, would not share the same perception." (citations omitted)); *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 609-10 (1989) ("[F]actors … evaluating the totality of the circumstances are: (1) nature of the unwelcome sexual acts or works (generally, physical touching is more offensive than unwelcome verbal abuse); (2) the frequency of offensive encounters; (3) the total number of days over which all of the offensive conduct occurs; and (4) the context in which the sexually harassing conduct occurred.").

Plaintiff has failed to plausibly allege a harassment claim under any set of circumstances, let alone the totality.  That Plaintiff must plausibly allege both objectively and subjectively offensive conduct is not a heightened pleading standard.  Opp'n at 11:1-13.  Stated another way, Plaintiff must allege more than just her own **subjective** interpretations of ordinary workplace interactions that could "possibly" be harassing. *See Arouh v. GAN Ltd.*, No. 8:23-cv-02001-FWS, 2024 WL 3469032, at *5 (C.D. Cal. Mar. 22, 2024) ("Plausibility 'is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully'" (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Plaintiff must also allege conduct that, objectively, amounts to harassment. *Hughes*, 46 Cal. 4th at 1044*; see Lyle v. Warner Bros.*

---

[2] To be sure, Defendants have not waived any defenses to her claims, including the right to move on the insufficiency of these claims on a motion to dismiss, particularly as Plaintiff is a resident of North Carolina who cannot properly allege claims under California law.

89191529.v3

*Television Prods.*, 38 Cal. 4th 264, 295 (2006) ("[T]he FEHA is "not a 'civility code' . . . .").  Yet in this FAC, as before, Plaintiff relies on conclusory allegations and speculation.  Plaintiff has not actually pointed to any harassing or sexual comments, and labeling comments harassing does not make them so.  *See Peterson v. U.S. Bancorp Equip. Finance, Inc.*, No. C 10-0942 SBA, 2010 WL 2794359, at *3 (N.D. Cal. July 15, 2010) (allegations that plaintiff "witnessed, experienced and/became aware of various forms and instances of hostile, disparaging and/or offensive treatment regarding or directed toward woman [sic] at USBEF . . . and made complaints and/or objections regarding such behavior" were too vague and conclusory to state a claim for sexual harassment).

**Comments and "Leering" over Zoom.**  As before, Plaintiff primarily points to comments Patangay allegedly made to her during Zoom meetings, about whether she was wearing makeup and whether she looked "anime."  These allegations are not new; what i**s** new is that Plaintiff now claims that these comments were "sexual" in nature.  But re-alleging these same comments, while now labeling them as "sexual" in nature, does not make them so, and it certainly does not show harassment.  *See, e.g.*, *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013) (noting manager comments questioning subordinate's appearance related to his position as a manager, and did not constitute harassment); *Haberman v. Cengage Learning, Inc.*, 180 Cal. App. 4th 365, 385 (2009) (noting "isolated, sporadic, and often trivial" comments, including that employees were "hot" or "'drop dead' gorgeous," did not show a concerted pattern of harassment); *see also Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1111 (9th Cir. 2000) (finding no hostile work environment where supervisor referred to appearance of female employees on multiple occasions).  Further, Plaintiff now accuses Patangay of "leering in a sexual manner" on Zoom – a claim that strains credulity, given that it is virtually impossible to determine where a Zoom participant is looking (and indeed, most of us are often looking at own self-view).

**Mischaracterizations/Contortions of What Patangay "Communicated."**  Plaintiff uses sleight of hand to claim that Patangay's innocuous actions, such as following coworkers on Facebook or asking an employee to order lunch, "communicated" that he was tracking their "sexual physical appearance," or "saw women as mere sexual objects good for only menial tasks" – even as, notably, Plaintiff never alleges Patangay ever **actually said** any of the things he

supposedly "communicated." *See, e.g.* FAC ¶¶ 25, 27-30, 38.  For example, Plaintiff claims that Patangay suggested that she and another employee looked like "anime," and that this "**communicated** both expressly and implicitly that Plaintiff would be treated better if she looked sexier." FAC ¶ 25.  This is a stretch, and an illogical one.  If Patangay had ever actually said any of these disparaging things, Plaintiff would have certainly alleged this; the glaring omission of any such allegations only confirms that Patangay never said anything of the kind.  This is not a mere semantic distinction – by improperly attributing words to Patangay that he never actually said, Plaintiff misleadingly casts Plaintiff's subjective impressions of benign, non-sexual comments as objective facts.[3]

**Allegations re Quid Pro Quo Dinners.**  Plaintiff's confusing series of allegations about "quid pro quo" dinners (which, even by Plaintiff's admission, involved discussion of work matters) demonstrate how far she is stretching the existing factual allegations to try and create the illusion of a plausible harassment claim.  Plaintiff claims that Patangay invited "sexually provocative" coworkers to work dinners but that she was not invited.  FAC ¶ 26.  Plaintiff's entire theory hinges on her allegation that some of her coworkers were "sexually provocative" – but, importantly, **this is Plaintiff's label of her coworkers**, not Patangay's.  Plaintiff **never** alleges that Patangay ever identified, suggested, or did anything to suggest that any individuals were "sexually provocative."  Nor does Plaintiff allege how she knows who was or was not invited, whether Patangay even initiated the dinners, what was discussed, or why she is identifying certain coworkers as "sexually provocative."  Plaintiff's counsel then argue that these selective dinner invitations "communicated" to Plaintiff that she would be "treated better if she looked sexier," "**which is a sexual advance**."  Opp'n at 15:20-23 (citing FAC ¶ 26) (emphasis added).  Stated another way, Plaintiff illogically contends that Patangay's **exclusion** of Plaintiff from work dinners "is a sexual advance."  *Id.*  This is attorney argument, not a factual allegation.  *Cf, Hoffman v. Red Wing Brands of Am., Inc.*, No. 3:13-cv-0633-LRH-VPC, 2015 WL 3903627, at

---

[3] In similar fashion, Plaintiff alleges that Patangay used a patronizing tone with women that he did not use with men, and "in doing so, he would label women in pejorative and sexist manners including but not limited to, as pushy, emotional, and stupid." FAC ¶ 28.  Again, Plaintiff is not alleging that Patangay ever told female coworkers that they were "pushy, emotional, and stupid," but she appears to be alleging that his "tone" communicated this, a self-serving leap of logic that tries to put words in Patangay's mouth that he never said.

*7 (D. Nev. June 24, 2015) (finding no quid pro quo harassment where plaintiff's continued employment was not conditioned on accepting her supervisor's lunch invitations, notwithstanding her belief that he enjoyed getting lunch with female employees).

**Work Assignments.**  Plaintiff alleges that she and others were given particular work tasks (administrative duties or ordering food at a work dinner) based on gender and appearance.  FAC ¶ 32.  But as before, Plaintiff does not explain why these tasks amount to "sexualized treatment," how they were related to appearance, and even if true, how they would amount to harassment, as opposed to discrimination.  *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 62 (1996) (holding that job assignments, invitations of meeting, promotions, performance evaluations, office assignments, "do not come within the meaning of harassment . . . . These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment.").

**Comments/Actions to Other Women.**  Perhaps recognizing that any comments/acts directed at Plaintiff are insufficient, Plaintiff raises one new legal argument – secondary harassment.  Opp'n at 11.  But secondary harassment requires a "higher showing" that such conduct "permeated her direct," "immediate work environment," and that she personally witnessed it.  *Lyle*, 37 Cal. 4th at 285; *Alexander v. Cmty. Hosp. of Long Beach*, 46 Cal. App. 5th 238, 262 (2020) (plaintiff must show "harassment directed at others was in [her] immediate work environment, and that [s]he personally witnessed it."); *Beyda v. City of Los Angeles*, 65 Cal. App. 4th 511, 520 (1998) (affirming defense judgment where plaintiff's evidence of harassment of other women was irrelevant to her own work environment).  Here, the FAC asserts in conclusory terms that Patangay "harassed women" and that "multiple women complained."  Plaintiff includes specific allegations of Patangay's comments to one coworker about her sexual orientation (FAC ¶ 27), but there is no allegation that this isolated incident impacted Plaintiff's employment.  At most, Plaintiff claims she and others were negatively impacted by Patangay's alleged anger, an allegation that does not flow to a harassment claim.  FAC ¶ 45.  In sum, as a whole, the FAC is void of the type of allegations that constitute actionable secondary harassment.[4]

---

[4] The cases cited by Plaintiff involved facts and allegations of extreme conduct that are entirely distinguishable from these allegations.  *See, e.g.*, *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 802 (8th Cir. 2009) ("nearly one hundred" complaints of unwanted advances and sexual conduct); *Pantoja v. Anton*, 198 Cal. App. 4th 87 (2011) (plaintiff witnessed specific epithets and

### 2.    The Cases Are in Accord.

Plaintiff again cites *Ding,* but the allegations in that case are an order of magnitude more severe than those here. Opp'n 11-12 (citing *Ding v. Structure Therapeutics, Inc.*, 755 F. Supp. 3d 1200, 1214 (N.D. Cal. 2024)). *Ding* alleged mistreatment with a direct nexus to the plaintiff's gender, including that managers only hired her to satisfy a diversity quota, told her she was "too aggressive," minimized her visible injuries from an incident of domestic violence perpetrated against her, told her she was too "sensitive" about the domestic violence and used that incident as pretext to terminate her. *Id.* Plaintiff's scattershot allegations are a far cry from the facts in *Ding.*

Plaintiff's attempt to distinguish *Juul* also fails. As in *Juul*, the claims here at most sound in discrimination, not harassment. *Johannessen v. Juul Labs, Inc.*, No. 3:23-cv-03681-JD, 2024 WL 3173286, at *4 (N.D. Cal. June 24, 2024); *see also Gal v. Meta Platforms Inc.*, No. 25-cv-06110-JST, 2026 WL 1864073, at *5 (N.D. Cal. June 29, 2026) (citing *Juul* and compelling arbitration, absent allegations of "instances in which 'sex [was] used as a weapon to create a hostile work environment.'" (citations omitted)). Plaintiff argues that, unlike *Juul*, she has she experienced "visual harassment of a sexual nature," and was "subjected to unwelcome sexual advances," and "epithets derogatory comments or slurs," but her FAC **alleges no such facts**, attorney argument notwithstanding. Opp'n at 15:1-16:1; *see Juul,* 2024 WL 3173286, at *4 (citing 2 Cal. Code Regs. § 11019(2)) (visual harassment involves "derogatory posters, cartoons. or drawings"). Plaintiff makes no allegation of visual harassment or sexual advances. And the only epithets, derogatory comments, or slurs in Plaintiff's FAC are her own spin on the non-sexual comments allegedly made by Patangay.

As for *Van De Hey v. EPAM Sys. Inc.*, Plaintiff's allegations are similar, if not weaker, than the inadequate allegations in that case. 2025 WL 829604, at *5 (allegations "not sufficiently severe to plausibly allege harassment."). Unlike here, Van de Hey identified specific gender-based comments (that she was "emotional because she is a woman" and that "Asian women have small hands"). *Id*. at *4. Here, the comments alleged are far less pointed—whether Plaintiff was wearing Zoom make up or directing Plaintiff to order t-shirts. Plaintiff cannot

conduct directed at female coworkers); *E.E.O.C. v. Cal. Psychiatric Transitions, Inc.*, 644 F. Supp. 2d 1249, 1254 (E.D. Cal. 2009) (supervisor engaged in overtly sexual misconduct toward other women – including grabbing his crotch, thrusting his hips, and making sexually explicit comments).

simply rely on her own assumptions about what Patangay was "communicating" when he made these statements to sustain a claim.[5]

### B.    Plaintiff's Claims Must Proceed on an Individual Basis in Arbitration.

Plaintiff's Opposition still does not cite a single case in which unrelated, non-harassment class/collective claims are excluded from arbitration under the EFAA.  As far as Defendants are aware, no published California decision has ever reached this conclusion.  Thus, even if Plaintiff could clear the threshold of alleging a harassment claim, her argument that the EFAA applies to her non-sexual harassment class and collective claims fails.

All of the cases cited by Plaintiff are inapposite because **none** involve class, collective, or representative claims.  Indeed, *Liu v. Miniso Depot CA, Inc.* expressly refrained from any opinion on the impact of the EFAA on class claims.[6]  105 Cal. App. 5th 791, 805 n.8. (2024), *review denied* (Dec. 31, 2024), *cert. denied*, 146 S. Ct. 107 (2025) (where complaint had no class claims, the Court of Appeal was "express[ing] no opinion" on the "impact the EFAA has on claims asserted on behalf of a class or other representative claims . . . .").

Allowing Plaintiff to circumvent the valid class waiver to force Defendant CZI to litigate on a class basis solely because Plaintiff has included a bare harassment claim among a series of unrelated claims is contrary to the legislative intent behind the EFAA.[7]  Nothing in the EFAA suggests that it extends to non-harassment class claims like these.  The EFAA only explicitly holds that class- **harassment** claims fall within its ambit.  9 U.S.C.A. § 402 (including allegations by "**the named representative of a class or in a collective action alleging [sexual harassment]**.

---

[5] Plaintiff's claim that her derivative failure to prevent harassment claim is sufficient, standing alone, to invoke the EFAA, is a red herring.  *See Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 804 (N.D. Cal. 2015) (holding liability requires actual unprevented discrimination) (citing to *Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998)).  Plaintiff cites *Turner v. Tesla*, 686 F.Supp.3d 917 (N.D. Cal. 2023) but *Turner* did not reach this holding, as it involved both a harassment claim and a failure to prevent claim.

[6] In many of the authorities cited by Plaintiff, a critical component of the courts' decision to exclude the entire case from arbitration under the EFAA was that plaintiffs only sought relief "only on [his or her] own behalf."  *See, e.g.*, *Turner v. Tesla, Inc.*, 686 F.Supp.3d 917, 925-26 (N.D. Cal. 2023) (noting that plaintiff's claims only relate to her own experience and her own employment); *Baldwin v. TMPL Lexington LLC*, No. 23 Civ. 9899 (PAE), 2024 WL 3862150, at *8, n.5 (S.D.N.Y. Aug. 19, 2024) ("Baldwin's claims are all brought on her behalf only").

[7] It is well-settled that class/collective waivers like this one are valid and enforceable.  *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506-509 (2018) ("[C]ourts may not allow a contract defense to reshape traditional individualized arbitration by mandating class wide arbitration procedures without the parties' consent"); *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1075-77 (9th Cir. 2014) (affirming dismissal of class action pursuant to class action waiver).

89191529.v3

. . ." (emphasis added)).  The express inclusion of harassment class claims affirms that the legislature intentionally excluded other, unrelated class claims (like those here).  *See, e.g., Farrell v. Boeing Emps. Credit Union,* No. 16-cv-02711-NC, 2019 WL 1980695, at *2 (N.D. Cal. May 3, 2019), *aff'd,* 965 F.3d 968 (9th Cir. 2020) ("When language is missing in a statute, the doctrine of *expressio unius est exclusio alterius* guides that 'omissions are the equivalent of exclusions.'").  The legislative history of the EFAA supports that finding as well.  *See, e.g., Lambert v. New Start Cap. LLC*, 799 F. Supp. 3d 258, 285 (S.D.N.Y. 2025), appeal withdrawn, No. 25-2160, 2026 WL 654284 (2d Cir. Feb. 27, 2026) (in passing EFAA, legislators expressed concern that "lawyers [may] try to game the system" by "tak[ing] unrelated claims out of the arbitration contract," and under EFAA, "only disputes that relate to sexual assault or harassment conduct can escape the forced arbitration clauses," (citing 168 Cong. Rec. S625, S627 (2022))).

The EFAA is no bar here: the class claims should be dismissed.

## III.  THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE.

### A.  Plaintiff Has Not Shown Procedural Unconscionability.

**First**, Plaintiff claims that she did not know that signing the Arbitration Agreement was voluntary, but employers may mandate arbitration as a condition of employment.  *Serafin v. Balco Props. Ltd., LLC*, 235 Cal. App. 4th 165, 179 (2015) (requiring arbitration agreement as a condition of employment is not a bar to enforcement (citations omitted)).  **Second**, Plaintiff's claim that she did not understand that she was waiving the right to a jury trial is belied by the Agreement's plain language, which states this waiver twice (including once in all caps).  Backs Decl. Ex. B (Dkt. 19-2).  Plaintiff's failure to read or understand this provision is no excuse.  *Trevino v. Acosta, Inc.*, No. 17-cv-06529 NC, 2018 WL 3537885, at *7 (N.D. Cal. July 23, 2018) (terms are not invalidated "merely because [plaintiff] did not understand the [arbitration] agreement or chose not to read it.).  **Third**, Plaintiff claims that she was not afforded the opportunity to ask questions or negotiate, citing *OTO, L.L.C. v. Kho.*  8 Cal. 5th 111, 126-127 (2019).  But unlike the plaintiff in *OTO*, Plaintiff is a sophisticated, highly-paid employee who received the agreement months earlier, had nearly two months to review it (*see* Backs. Decl., Ex. A, par. n), and was encouraged to consult with independent counsel – all of which weigh against

procedural unconscionability.[8]  And the fact that the Arbitration Agreement was presented as a contract of adhesion is not enough.  *Baltazar v. Forever 21, Inc*., 62 Cal. 4th 1237, 1244 (2016).

## B.    The Agreement Is Not Substantively Unconscionable.

Plaintiff's arguments on substantive unconscionability also fail.  **First,** the absence of an explicit sexual harassment claim carveout does not establish unconscionability: "[T]he EFAA did not make it illegal for a company to include in an employment contract an arbitration provision seeking to cover sexual harassment claims."  *Ding I,* 755 F. Supp. 3d at 1207, n.2 ("The potential unenforceability of a provision does not make that provision substantively unconscionable," citing *Poublon v. C.H. Robinson Co*., 846 F.3d 1251, 1264 (9th Cir. 2017)).

**Second,** Plaintiff incorrectly contends that the Agreement contains an unconscionable blanket PAGA waiver.  Courts have routinely enforced similar waivers that allow plaintiffs to assert the individual portion of their PAGA claims in arbitration.  *See, e.g.*, *Vazquez v. Tommy Bahama R&R Holdings, Inc.*, No. 322CV01881JESKSC, 2023 WL 8264554, at *6 (S.D. Cal. Nov. 29, 2023) (agreement did not contain improper "wholesale waiver" where it preserved the right to arbitrate all claims individually, and was therefore consistent with *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 651 (2022)); *Tercero v. Sacramento Logistics LLC*, No. 2:24-CV-00953-DC-JDP, 2025 WL 43125, at *13 (E.D. Cal. Jan. 7, 2025) (collecting cases).  Thus, contrary to Plaintiff's claim that Defendant is unaware of the "legal reality" after *Viking River*, the Agreement clearly allows Plaintiff to pursue her individual PAGA claims in arbitration, while the representative portion of her PAGA claim is stayed before this Court, consistent with *Adolph v. Uber Techs., Inc.*, 14 Cal. 5th 1104 (2023).[9]

**Third,** Plaintiff's argues that the scope of the Arbitration Agreement is indefinite and not limited to employment, citing *Cook,* fails because unlike the *Cook* agreement, the Arbitration Agreement is explicitly limited to disputes that arise "in connection with [Plaintiff's] employment . . . ."  Opp'n at 19:11-25; Backs Decl. Ex. B at p. 11 (Dkt. 19-2); *compare Cook v. University of*

---

[8] In contrast, the *OTO* plaintiff was presented with the agreement not in his native language, in "visibly impenetrable" small font, by a coworker who could not answer any questions and, as a piece rate worker, he would have lost pay if he had stopped to read it.  *OTO*, 8. Cal. 5th at 126.
[9] The Arbitration Agreement also expressly provides that this provision is severable.  Backs Decl. Ex. B ("In the event that a portion of this provision, such as, for example, the prohibition on the right to participate in a representative action, is deemed invalid, the remainder of the provision and Agreement shall remain enforceable."); *see Poublon*, 846 F.3d at 1264 (severing and enforcing agreement with PAGA waiver).

*Southern California*, 102 Cal. App. 5th 312, 321 (2024) (agreement impermissibly covered "all claims, **whether or not** arising out of Employee's University employment." (emphasis added)). This limitation to employment disputes "imposes an inherent limitation on the agreement's duration," as such claims "stop accruing when the employment relationship ends." *Cocom v. ABM Aviation, Inc.*, No. 25-3246, 2026 WL 1793637, at *7 (9th Cir. June 23, 2026).

**Fourth,** Plaintiff also argues that the limited fee-shifting provision in the Arbitration Agreement is unconscionable, citing *Ramirez v. Charter Communications*, *Inc.*, 16 Cal. 5th 478, 507–08 (2024). But unlike *Ramirez*, which mandated payment of attorneys' fees to a losing party on a motion to compel, the fees provision here does not mandate that the court award anything; it merely acknowledges the court has "jurisdiction," consistent with the law. Backs Decl. Ex. B at p. 12 (Dkt. 19-2). And Defendants do not request fee-shifting here. Furthermore, the FEHA amendment does not render the agreement **unconscionable**; it merely renders a contrary fees provision **unenforceable**. *Cf Ding I*, 755 F. Supp. 3d at 1207, n.2.

**Finally,** even if the Court finds any of the above provisions unconscionable (they are not), the Court may simply sever those provisions. Each provision is collateral to the primary purpose of the Agreement. *See Serpa v. California Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 710 (2013), as modified (Apr. 19, 2013) (fee provision was "plainly collateral to the main purpose of the contract" and was "properly severed"); *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 101–02 (2003) (severing fee provision); *see also Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 433 (N.D. Cal. 2018) (severing three provisions "without disrupting the agreement's chief objective"- submitting employment disputes to arbitration); *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1178-79 (S.D. Cal. 2011) (severing three provisions). Severing and enforcing is consistent with the FAA's mandate to "rigorously enforce agreements to arbitrate"; this is "the strong legislative and judicial preference." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985); *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 986 (2010).

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court enforce the Arbitration Agreement, compel Plaintiff's individual claims to arbitration, dismiss her class and collective claims, and stay her representative PAGA claim pending conclusion of the arbitration.

89191529.v3

DATED:  July 16, 2026

GBG LLP


BY:    _/s/ Teresa W. Ghali_
                     TERESA W. GHALI

Attorneys for Defendants